UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                        :    10 Civ. 4045 (DLC)
In Re SAUNDRA PLUMERI,                   :
                        Debtor.          :
                                        :    OPINION & ORDER
------------------------------------------X

APPEARANCES:

For Appellant-Debtor Saundra Plumeri:
Richard D. Lamborn
327 East 149th Street
Bronx, NY 10451

For Appellee 64th Street-Third Avenue Associates LLC:
James C. Mantia
Sperber Denenberg & Kahan, P.C.
48 West 37th Street, 16th Floor
New York, NY 10018

DENISE COTE, District Judge:

    Bankruptcy debtor Saundra Plumeri ("Debtor") and her

attorney, Richard D. Lamborn ("Lamborn"), appeal from an Order of

the Honorable Martin Glenn, United States Bankruptcy Judge,

imposing sanctions against Lamborn and awarding attorney's fees

to appellee 64th Street-Third Avenue Associates, LLC (the

"Landlord").  The reason for the sanctions is that Lamborn failed

to disclose, as required by 11 U.S.C. § 362(*l*)(5), that the

Landlord had an outstanding judgment of possession against the

Debtor for the apartment in which she resided at the time that

she filed for Chapter 13 bankruptcy.  For the following reasons,

the Order of the Bankruptcy Court is affirmed.

<u>BACKGROUND</u>

The following facts are taken from the designated bankruptcy record, the Bankruptcy Court's March 25, 2010 Order (the "Sanctions Order"), pertinent state court filings,[1] and the parties' submissions on appeal, and are undisputed unless otherwise noted.

I.   Statutory Background

This appeal concerns Lamborn's failure to disclose the Debtor's pre-petition judgment of possession as required by § 362($l$)(5) of the Bankruptcy Code.[2]  In order to understand the procedural history of the litigation between the parties to this appeal, and in order to evaluate properly the Bankruptcy Court's decision to impose sanctions, it is necessary to begin by reviewing the applicable statutory scheme.

As a general matter, until recently, the filing of a federal bankruptcy petition by a residential tenant-debtor would halt any pending or potential eviction proceedings by that tenant-debtor's landlord.  The basis for this rule is the

---

[1] The Court may take judicial notice of state court filings. <u>See, e.g.</u>, <u>Staehr v. Hartford Fin. Servs. Grp., Inc.</u>, 547 F.3d 406, 425 (2d Cir. 2008) ("[C]ourts routinely take judicial notice of documents filed in other courts to establish the fact of such litigation and related filings." (citation omitted)).

[2] Title 11 of the United States Code is commonly referred to as the "Bankruptcy Code."

"automatic stay" provision of the Bankruptcy Code.  Subsection 362(a) of the Bankruptcy Code provides:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of --
>
> . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a)(3).  Although a lessor could obtain relief from the automatic stay if it could demonstrate the existence of certain statutorily defined circumstances, the lessor would first be required to appear in the debtor's bankruptcy proceedings and petition the bankruptcy court in order to do so.

In 2005, however, Congress revised the Bankruptcy Code's interaction with the field of landlord-tenant law by enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[3]  Among other things, the BAPCPA amended the Bankruptcy Code to exempt from the operation of the automatic stay all non-bankruptcy enforcement proceedings undertaken by a lessor related to a pre-petition judgment of possession obtained

---

[3] Several bankruptcy courts have had occasion to review the effect of BAPCPA on the availability of a bankruptcy stay to halt pending eviction proceedings.  See, e.g., In re Harris, 424 B.R. 44, 52-54 (Bankr. E.D.N.Y. 2010); In re Griggsby, 404 B.R. 83, 88-91 (Bankr. S.D.N.Y. 2009); In re Winer, No. 08-40476-ess, 2008 WL 2074091, at *3-*4 (Bankr. E.D.N.Y. May 13, 2008); In re Parker, No. 08-00278, 2008 WL 2081536, at *2-*3 (Bankr. D.D.C. May 8, 2008).

by the lessor against a residential tenant-debtor.  As amended,
subsection 362(b)(22) provides:

> The filing of a petition under section 301, 302, or
> 303 of this title . . . does not operate as a stay --
> . . .
>
>> (22) subject to subsection (*l*), under subsection
>> (a)(3), of the continuation of any eviction,
>> unlawful detainer action, or similar proceeding
>> by a lessor against a debtor involving
>> residential property in which the debtor resides
>> as a tenant under a lease or rental agreement and
>> with respect to which the lessor has obtained
>> before the date of the filing of the bankruptcy
>> petition, a judgment for possession of such
>> property against the debtor[.]

11 U.S.C. § 362(b)(22) (emphasis added).

Although § 362(b)(22) appears to exempt all eviction
proceedings from the operation of the automatic stay, it must be
read in conjunction with § 362(*l*), another provision added by
the BAPCPA.  Subsection (*l*) provides, in turn, that a debtor
may, by fulfilling certain requirements at the time of filing
for bankruptcy, obtain a brief stay of eviction proceedings by
postponing for thirty days the date on which § 362(b)(22)
becomes effective.  Specifically, the BAPCPA amends § 362 to
provide:

> Except as otherwise provided in this subsection,
> subsection (b)(22) shall apply on the date that is 30
> days after the date on which the bankruptcy petition
> is filed, if the debtor files with the petition and
> serves upon the lessor a certification under penalty
> of perjury that --

> (A) under nonbankruptcy law applicable in the
> jurisdiction, there are circumstances under which
> the debtor would be permitted to cure the entire
> monetary default that gave rise to the judgment
> for possession, after that judgment for
> possession was entered; and
>
> (B) the debtor . . . has deposited with the clerk
> of the court, any rent that would become due
> during the 30-day period after the filing of the
> bankruptcy petition.

11 U.S.C. § 362(*l*)(1).  Thus, in order for a debtor to avoid the
immediate application of § 362(b)(22) and thereby stay eviction,
the debtor must: (1) reside in a jurisdiction in which the
debtor is able to "cure the entire monetary default that gave
rise to the judgment for possession"; (2) certify that that
circumstance is applicable to the debtor (i.e., that the
judgment of possession was premised on a monetary, rather than a
non-monetary, default); and (3) deposit with the clerk of the
bankruptcy court "any rent that would become due during the 30-
day period" after filing for bankruptcy.  Id.

     Subsection (*l*) also imposes an independent duty on
bankruptcy debtors to disclose the existence of a pre-petition
judgment for possession.  In particular, § 362(*l*)(5)(A)
provides:

> Where a judgment for possession of residential
> property in which the debtor resides as a tenant under
> a lease or rental agreement has been obtained by the
> lessor, the debtor shall so indicate on the bankruptcy
> petition and shall provide the name and address of the
> lessor that obtained that pre-petition judgment on the

<u>petition and on any certification filed under this
subsection</u>.

(Emphasis added).  Likewise, § 362(*l*)(5)(B) specifies:

> The form of certification filed with the petition, as
> specified in this subsection, shall provide for the
> debtor to certify, and <u>the debtor shall certify</u> --
>
>> (i) <u>whether a judgment for possession of
>> residential rental housing in which the debtor
>> resides has been obtained against the debtor
>> before the date of the filing of the petition</u>;
>> and
>>
>> (ii) <u>whether the debtor is claiming under
>> paragraph (1) that under nonbankruptcy law
>> applicable in the jurisdiction, there are
>> circumstances under which the debtor would be
>> permitted to cure</u> the entire monetary default
>> that gave rise to the judgment for possession,
>> after that judgment of possession was entered,
>> <u>and has made the appropriate deposit with the
>> court</u>.

(Emphasis added).  Moreover, for cases filed within the United

States Bankruptcy Court for the Southern District of New York

(the "Bankruptcy Court"), the Bankruptcy Court has further

specified the precise method by which a bankruptcy debtor

seeking to prevent the operation of 11 U.S.C. § 362(b)(22) must

make her § 362(*l*) certification.  See <u>In re Procedures for

Payment and Cure of Pre-Petition Judgment of Possession

Involving Residential Property</u>, General Order M-385 (Bankr.

S.D.N.Y. Nov. 24, 2009) (amending General Order M-352)

(effective December 1, 2009).[4]

---

[4] Specifically, General Order M-385 requires:

Assuming that a bankruptcy debtor has complied with §§ 362(*l*)(1) and (5) and gained the benefit of the 30-day stay, the BAPCPA provides a further process by which the debtor can postpone the applicability of § 362(b)(22) indefinitely.  To extend the stay, the debtor must file with the court and serve upon the lessor a further sworn certification "that the debtor . . . has cured, under nonbankrupcty [sic] law applicable in the jurisdiction, the entire monetary default that gave rise to the judgment under which possession is sought by the lessor."  Id. § 362(*l*)(2).

Nevertheless, in enacting the BAPCPA, Congress contemplated that many debtor-tenants with outstanding judgments of possession against them will, when filing for bankruptcy, not be able to meet the § 362(*l*) certification and rent-deposit requirements.  As such, § 362(*l*)(4) provides:

> (4) If a debtor, in accordance with paragraph (5), indicates on the petition that there was a judgment

---

1. Making the required certification by completing the four check boxes, including the landlord's name and address, listed in the voluntary petition under the section entitled "Statement by a Debtor who Resides as a Tenant of Residential Property"; and

2. Delivering to the Clerk, together with the petition (or within one day of the filing, if the petition is filed electronically) (a) a certified or cashier's check or money order, made payable to the lessor, in the amount of any rent that would become due during the 30 day period after the filing of the petition, and (b) a copy of the judgment of possession[.]

for possession of the residential rental property in
which the debtor resides and does not file a
certification under paragraph (1) or (2) --

> (A) subsection (b)(22) shall apply immediately
> upon failure to file such certification, and
> relief from the stay provided under subsection
> (a)(3) shall not be required to enable the lessor
> to complete the process to recover full
> possession of the property; and

> (B) the clerk of the court shall immediately
> serve upon the lessor and the debtor a certified
> copy of the docket indicating the absence of a
> filed certification and the applicability of the
> exception to the stay under subsection (b)(22).

Id. (emphasis added).  Thus, assuming that a bankruptcy debtor

has properly disclosed the existence of a pre-petition judgment

of possession, but cannot or does not seek to cure in order to

forestall eviction, § 362(*l*)(4) triggers action by the clerk of

the bankruptcy court to notify all relevant parties that §

362(b)(22) applies and, thus, that the eviction may proceed.

The Bankruptcy Code, as amended by the BAPCPA, does not

specifically address the circumstance in which a bankruptcy

debtor fails to disclose a pre-petition judgment of possession

in the first instance as required by § 362(*l*)(5).  The

bankruptcy court clerk's duty to serve a notice of the

applicability of § 362(b)(22) extends only to circumstances in

which the bankruptcy debtor has disclosed a pre-petition

judgment, but has not properly made the accompanying

certifications.  Nevertheless, because the § 362(*l*) disclosure-

8

and-certification process is the sole means contemplated by the Bankruptcy Code for forestalling the applicability of § 362(b)(22), it follows from the statutory structure outlined above that if <u>no</u> pre-petition judgment of possession is disclosed by the debtor at the time of filing for bankruptcy, § 362(b)(22) is immediately effective and no stay of eviction exists.  As a result, if a debtor intends, by filing for bankruptcy, to forestall her eviction, she must disclose the existence of any pre-petition judgment of possession and promptly file the certifications required by § 362(*l*).

## II.   The 2008 and 2009 Proceedings

On January 18, 2008, the Landlord commenced a "non-payment of rent" proceeding against the Debtor and her husband (the "Husband") in New York City Civil Court, Housing Part ("Housing Court").[5]  <u>See</u> <u>64th St-3rd Ave. Assocs., LLC v. Plumeri</u>, No. 52746/08 (N.Y.C. Civ. Ct. Jan. 18, 2008) (the "2008 Non-Payment Action").  On April 15, 2008, the Housing Court denied the Landlord's motion for summary judgment and set the case down for trial on April 29, 2008.

_____

[5] The designated record on appeal includes an affidavit from the Landlord's agent attesting to a protracted history of litigation between the Debtor and Landlord in Housing Court.  In particular, eight separate "non-payment" or holdover proceedings were filed by the Landlord against the Debtor between 1998 and 2004.  A further non-payment proceeding was initiated in 2007.  Because these proceedings predate the Debtor's bankruptcy filings, they need not be further discussed herein.

On April 28, 2008 -- the day before trial was scheduled in the 2008 Non-Payment Action -- the Debtor filed a Chapter 7 bankruptcy petition.  See In re Plumeri, Case No. 08-11546-jmp (Bankr. S.D.N.Y.) (the "Chapter 7 Proceeding").  As a result of the Debtor's Chapter 7 filing, trial in the 2008 Non-Payment Action was stayed as to the Debtor.  The trial proceeded as to the Husband, at which the Landlord prevailed, and a judgment of possession was entered against the Husband.  The Debtor was granted a Chapter 7 bankruptcy discharge on August 22, 2008 pursuant to 11 U.S.C. § 727, releasing her of all outstanding dischargeable debts.

Meanwhile, on June 26, 2008, the Landlord moved the Bankruptcy Court for relief from the automatic stay that had entered into effect as to the Debtor when she filed the Chapter 7 Proceeding.  Following several rounds of briefing, multiple adjournments, and an interim order, the Honorable James Peck granted the Landlord's motion for relief from the automatic stay on December 2, 2008 (the "December 2 Order"), finding the Debtor had failed to adequately protect the interests of the Landlord.[6]

_____

[6] Title 11, Section 362(d)(1) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay --

As a result, the automatic stay was vacated, and the Landlord
became free to resume litigation in Housing Court.  The
Bankruptcy Court closed the Chapter 7 case on December 10, 2008.[7]

On or about January 2, 2009, the Landlord initiated a new
"non-payment of rent" proceeding in Housing Court.  See 64th St-
3rd Ave. Assocs., LLC v. Plumeri, Index No. 50025/09 (N.Y.C.
Civ. Ct.) (the "2009 Non-Payment Action").  The Debtor was
represented in both the 2008 and 2009 Non-Payment Actions by
Stuart Dankberg ("Dankberg").  After various pre-trial
proceedings, as well as several adjournments made at the
Debtor's request, trial in the 2009 Non-Payment Action was set
down for June 8, 2009.

On June 5, 2009, the last business day before trial was
scheduled to begin in the 2009 Non-Payment Action, the Debtor
filed a Chapter 13 bankruptcy petition.[8]  See In re Plumeri, Case

---

(1) for cause, including the lack of adequate
protection of an interest in property of such
party in interest[.]

[7] On December 17, 2008, the Debtor filed a notice of appeal.  The
sole ground on appeal was that the Bankruptcy Court erred by
granting the Landlord's request for relief from the automatic
stay.  After the Debtor failed to file an appellate brief,
however, the Honorable Lewis Kaplan dismissed the bankruptcy
appeal on or about May 26, 2009.  Following dismissal of the
appeal, the Chapter 7 Proceeding was administratively closed by
the Clerk of the Bankruptcy Court on June 3, 2009.

[8] For each of the Debtor's three bankruptcy cases, the Debtor
retained different counsel.  Her Housing Court attorney was, at
all relevant times, Dankberg.

No. 09-13632-mg (Bankr. S.D.N.Y.) (the "2009 Chapter 13 Proceeding").  The filing of the 2009 Chapter 13 Proceeding triggered an automatic stay under 11 U.S.C. § 362(a), and the June 8 trial was cancelled.  On June 15, 2009, the Landlord moved before the Bankruptcy Court to vacate the automatic stay; moved to dismiss the 2009 Chapter 13 Proceeding as a bad-faith filing; and moved for sanctions against the Debtor.

On July 9, 2009, the Bankruptcy Court granted the Landlord's § 362(d)(1) application to lift the automatic stay (the "July 9 Order"), finding that the Landlord lacked adequate protection and that the "Debtor[] ha[d] succeeded at keeping her landlord at bay for too long without paying rent."  With respect to the Landlord's motion to dismiss and motion for sanctions, however, the court declined to grant relief.  Judge Glenn concluded that "[w]hile [it is] a very close question, the current record does not establish that the Debtor filed this chapter 13 case in bad faith," and that only through a "time-consuming evidentiary hearing" could it be clearly determined whether the Debtor had acted in bad faith.  The July 9 Order advised that "[i]f Debtor has some other legitimate purpose for maintaining this chapter 13 case, the Court will permit her to do so."  Thereafter, however, the Debtor did not take any steps to pursue confirmation of a Chapter 13 bankruptcy plan, but

instead voluntarily dismissed her case on or about October 15, 2009.

Following the July 9 Order granting the Landlord relief from the automatic stay, the 2009 Non-Payment Action was restored to the Housing Court's calendar, and the Landlord moved therein for summary judgment.  On September 18, the Housing Court denied the summary judgment motion and set the case down for trial on September 29.[9]  On September 29, neither the Debtor nor Dankberg appeared.  As a result, the Housing Court entered two default judgments: one a money judgment for the amount of rent in arrears (the "Money Judgment"), and the other a combined money judgment and judgment of possession for Debtor's residence (the "Judgment of Possession").[10]

A warrant of eviction was issued on December 10, 2009. That same month, Dankberg brought an Order to Show Cause on the Debtor's behalf seeking to vacate the Judgment of Possession. On December 22, 2009, following oral argument, the Housing Court issued an order (the "December 22 Order") declining to grant the relief requested in the proposed Order to Show Cause.  The December 22 Order found that the Debtor's motion "fail[ed] to

---

[9] The return date for the Landlord's summary judgment motion was July 31, 2009.  Dankberg failed to appear for argument on the motion, so the matter was taken on submission.

[10] The amount of the Money Judgment was $41,206.68, and the monetary component attached to the Judgment of Possession was $8,307.76.

raise either excusable default or [a] meritorious defense to support the last minute relief sought," and that the Debtor had also "failed to offer a reasonable explanation for the failure to take any action from the time of the submission of the pet[itioner]'s summary judgment on default on 7/31/09, to the filing of the instant motion."  The December 22 Order further indicated that while the Debtor had argued that a bankruptcy stay was in place, "[t]he movant's claim of a stay as a result of the bankruptcy filing is belied by the Order of 7/9/09 of J. Glenn."

### III. The 2010 Proceedings

Following the denial of post-Judgment relief in the 2009 Non-Payment Proceeding, the eviction of the Debtor was finally scheduled for January 7, 2010.  Prior to that date, a Notice of Eviction was served on the Debtor by the City Marshal.

On January 5, 2010, the Debtor contacted Lamborn -- who had not been involved in the previous Bankruptcy or Housing Court proceedings -- about the possibility of Lamborn serving as her attorney.  The Debtor informed Lamborn that she had an eviction scheduled for January 7 and that she was interested in filing for bankruptcy.  Lamborn agreed to serve as Debtor's counsel.

On January 6, the Debtor, acting through Lamborn, filed a Chapter 13 bankruptcy petition with the Bankruptcy Court (the

14

"Initial Petition").  See In re Plumeri, Case No. 10-10050-mg
(Bankr. S.D.N.Y.) (the "2010 Chapter 13 Bankruptcy Proceeding").
The 2010 Chapter 13 Proceeding, out of which this appeal arises,
was initiated less than three months after the 2009 Chapter 13
Proceeding was voluntarily dismissed.  In filing the Initial
Petition, Lamborn did not check the box reading: "Landlord has a
judgment against the debtor for possession of debtor's
residence," nor any of the other boxes on the face of the
Initial Petition associated with the 11 U.S.C. § 362(*l*)
certification.[11]

     The same day, immediately upon filing the Initial Petition,
Lamborn faxed a letter (the "January 6 Letter") to the Landlord
and to Thomas J. Bia, New York City Marshal, who had been
assigned to carry out the Debtor's eviction.  In the January 6
Letter, Lamborn asked that the Marshal and the Landlord "cease
all prosecution of the above referenced case, release the
execution of warrant and immediately and [sic] fax me written
confirmation at the above fax number."  Lamborn attached to the
January 6 Letter a copy of the "Notice of Bankruptcy Case

---

[11] The Debtor asserts that, as of this moment, the Landlord had
not served a copy of the Judgment of Possession on the Debtor,
Dankberg, or Lamborn; Lamborn did not have a copy of the
Judgment; and Landlord's counsel did not have a copy of the
Judgment.  It is undisputed on appeal that Housing Court docket
records are not electronically available, and thus, that any
party seeking to obtain a judgment of possession must retrieve
it in person from the Housing Court.

Filing" that had been automatically issued to Lamborn by the Bankruptcy Court's online case-filing system.  Lamborn did not include a copy of the Initial Petition with the January 6 Letter, but instructed the recipients that "the papers and filings in the case are available via the internet on PACER."

On January 11, the Landlord filed a motion for relief from the automatic stay; moved to dismiss the 2010 Chapter 13 Proceeding as a bad-faith filing pursuant to 11 U.S.C. § 1307(c);[12] and moved for sanctions against the Debtor, Lamborn, and Dankberg (the "January 11 Motion").  The January 11 Motion requested sanctions against Debtor, Lamborn, and Dankberg "for their filing of the instant proceeding in bad faith and their material misrepresentation regarding the creditors in this proceedings [sic] chapter 13 petition."  The January 11 Motion attached some twenty-five exhibits, including records from previous Housing Court and Bankruptcy Court proceedings, but did not include a copy of the Judgment of Possession.

Around one hour after the Landlord filed the January 11 Motion, Lamborn filed the Debtor's first amended bankruptcy petition (the "First Amended Petition").  The First Amended Petition, like the Initial Petition, did not disclose that the

---

[12] That section provides, in pertinent part, that "on request of a party in interest . . . and after notice and a hearing, the court may . . . dismiss a case under this chapter . . . for cause."  11 U.S.C. § 1307(c).

Judgment of Possession had been rendered.[13]

On January 15, Lamborn filed the Debtor's second amended bankruptcy petition (the "Second Amended Petition").  In the Second Amended Petition, Lamborn disclosed for the first time that the Judgment of Possession existed.  Lamborn also checked the boxes on the face of the Second Amended Petition indicating that: (1) the Debtor was permitted to cure the entire monetary default under applicable nonbankruptcy law; (2) the Debtor was making a deposit of all rent coming due during the 30-day period after filing the petition; and (3) that the Debtor had served the Landlord with the petition and certification.  On or about same day, the Debtor deposited with the Clerk of the Bankruptcy Court the rent that would become due during the 30-day period after filing the Initial Petition.

On January 20, Lamborn filed a copy of the Debtor's Notice of Eviction with the Bankruptcy Court.  Lamborn made this filing in lieu of filing the Judgment of Possession itself, which he had still not located or received.[14]

---

[13] Lamborn indicates on appeal that the First Amended Petition was filed for the sole purpose of correcting an error in the Debtor's address that had been called to Lamborn's attention by the Clerk of the Bankruptcy Court.

[14] On January 20, 2010 -- notwithstanding that the Judgment of Possession had not yet been filed -- the Clerk of the Bankruptcy Court issued a "Debtor's Notice of Compliance and Intent to Cure Pre-Petition Judgment of Possession" indicating that the Debtor "has complied with 11 U.S.C. § 362(*l*)(1) and General Order M-

On February 4, the Debtor cross-moved to quash the January 11 Motion on the grounds that the Landlord had not complied with Local Bankruptcy Rule 9078-1, which requires "any party serving a pleading . . . [to] file proof of service" within "three days following the date of service."  In the alternative, the Debtor cross-moved to adjourn the return date on the January 11 Motion, which was set for February 11, the same day that the Debtor's meeting of creditors (known as a "341 hearing") was scheduled to be held.

On February 11, a conference was held before Judge Glenn on the Landlord's January 11 Motion.  At the conference, the Debtor's two cross-motions were denied.  The court advised that it was considering sanctions against Lamborn pursuant to "the inherent power of the Court" as well as 28 U.S.C. § 1927.[15]  The court directed the parties to consult a recent decision issued by the court, In re Green, 422 B.R. 469 (Bankr. S.D.N.Y. Feb. 2, 2010), in which sanctions were imposed against an attorney who had failed to comply with 11 U.S.C. § 362($l$)(5).  The court then adjourned the conference to February 16 and instructed the

---

385" by submitting "the amount of rent that is to become due during the 30-day period following the filing of the debtor's voluntary petition" as well as submitting "a copy of the judgment of possession."

[15] The Landlord's January 11 Motion seeking sanctions against the Debtor, Dankberg, and Lamborn did not indicate the specific source of sanctions authority under which the motion was being brought.

Landlord to submit a supplemental affirmation containing a copy
of the Judgment of Possession, which no party had yet obtained.

On or about February 12, Landlord's counsel produced a copy
of the Judgment of Possession to the Debtor.  Immediately upon
receiving a copy of the Judgment of Possession, Lamborn conceded
its existence.

At the next conference on February 16, the Bankruptcy Court
entered an Order (the "February 16 Order") granting the
Landlord's motion for relief from the automatic stay.  The court
indicated that its decision was premised on the Debtor's failure
to cure the full amount of the pre-petition monetary default
within 30 days pursuant to 11 U.S.C. § 362($l$)(2).  With respect
to the sanctions and bad-faith-filing components of the January
11 Motion, however, the court reserved decision, deciding to
grant the parties an opportunity to brief the legal issues in
light of In re Green.

On February 22, the Landlord withdrew its request that the
petition be dismissed as a bad-faith filing, but continued to
press for sanctions with respect to the Debtor's initial failure
to disclose the Judgment of Possession.[16]  On or around March 4,

_____

[16] In the Sanctions Order, the Bankruptcy Court noted that the
Landlord did not concede that the 2010 Chapter 13 Proceeding was
initiated without bad faith, but rather, the court indicated
that the Landlord was electing to participate in the 2010
Chapter 13 Proceeding in the hope of eventually "recover[ing]
some of the prepetition rental arrears owed by the Debtor" under

the Landlord was restored to possession of the Debtor's apartment.

After the parties filed their opposition and reply papers on the question of sanctions, a hearing was held on March 16 (the "March 16 Hearing").  At the March 16 Hearing, the Landlord and Lamborn were each given an opportunity to be heard regarding whether Lamborn had engaged in bad-faith or reckless conduct sanctionable under either the court's inherent power or under 28 U.S.C. § 1927.

On March 25, the Bankruptcy Court issued its Sanctions Order imposing sanctions against Lamborn in the form of an award of attorney's fees to the Landlord in the amount of $2,500.  The Bankruptcy Court found that "there was no colorable reason for Lamborn not to disclose the prepetition judgment for possession in the Debtor's bankruptcy petitions" and that his failure to disclose the Judgment of Possession as required by 11 U.S.C. § 362($l$)(5) amounted to "reckless" conduct.  The Bankruptcy Court concluded, however, that it would "[c]haritably giv[e] Lamborn the benefit of the doubt" and "decline[] to find that his conduct (or absence of it) was taken in bad faith."  The Bankruptcy Court declined to impose sanctions pursuant to 28 U.S.C. § 1927, but instead relied only upon its inherent power.

a confirmed Chapter 13 plan.  To that end, the Landlord filed a proof of claim in the 2010 Chapter 13 Proceeding in the amount of $58,053.24 on February 22.

On April 7, 2010, Debtor and Lamborn appealed from the
Sanctions Order.  That appeal was docketed in this Court on May
17.  On May 25, Lamborn moved before this Court for a stay of
the Sanctions Order pending appeal.[17]  On June 14, following
briefing by the parties, Lamborn's May 25 motion was granted on
the condition that Lamborn immediately post a bond in the amount
of $2,750.  That bond was posted on June 16.  Lamborn's
appellate brief was filed on June 18, and the Landlord's
appellate brief was filed on July 2.  This matter became fully
submitted with Lamborn's reply on July 16.[18]

DISCUSSION

I.   Legal Standard

District courts are vested with appellate jurisdiction over
bankruptcy court rulings pursuant to 28 U.S.C. § 158(a).  On
appeal, the court "may affirm, modify, or reverse a bankruptcy
judge's judgment, order, or decree or remand with instructions
for further proceedings."  Fed. R. Bankr. P. 8013.  "Findings of
fact, whether based on oral or documentary evidence, shall not

---

[17] Lamborn first moved for a stay before the Bankruptcy Court.
On May 20, the Bankruptcy Court granted that request on the
condition that Lamborn post a bond with the Clerk of the
Bankruptcy Court in the amount of $2,750 by May 25.  Lamborn did
not post a bond, but instead moved before this Court for an
unconditional stay.

[18] The Debtor's Chapter 13 plan was confirmed by the Bankruptcy
Court on June 17, 2010.  The Chapter 13 plan provides that the
Debtor shall pay the Landlord 100% of its claimed rent arrears.

21

be set aside unless clearly erroneous . . . ."  Id.; see Solow
v. Kalikow (In re Kalikow), 602 F.3d 82, 91 (2d Cir. 2010)
(noting that "[f]indings of fact are reviewed for clear error").
Likewise, "due regard shall be given to the opportunity of the
bankruptcy court to judge the credibility of the witnesses."
Fed. R. Bankr. P. 8013; cf. United States v. Iodice, 525 F.3d
179, 185 (2d Cir. 2008) (counseling "particularly strong
deference" to "credibility determinations").  Although the
Bankruptcy Court's findings of fact "are not conclusive on
appeal, the party that seeks to overturn them bears a heavy
burden," H & C Dev. Grp., Inc. v. Miner (In re Miner), 229 B.R.
561, 565 (B.A.P. 2d Cir. 1999), and the reviewing court must be
"left with the definite and firm conviction that a mistake has
been made."  ASM Capital, LP v. Ames Dep't Stores, Inc. (In re
Ames Dep't Stores, Inc.), 582 F.3d 422, 426 (2d Cir. 2009).  The
Bankruptcy Court's legal conclusions, however, are "reviewed de
novo."  In re Kalikow, 602 F.3d at 91.

     "A bankruptcy court's award of sanctions will not be set
aside [by the appellate court] in the absence of an abuse of
discretion."  Id.  The bankruptcy court "abuses its discretion
if it based its ruling on an erroneous view of the law or on a
clearly erroneous assessment of the evidence."  Id. (citation
omitted).  "[A]lthough the decision to impose sanctions is
uniquely within the province of a bankruptcy court, [the

appellate court] nevertheless need[s] to ensure that any such decision is made with restraint and discretion." Klein v. Wilson, Elser, Moskowitz, Edelman & Dicker (In re Highgate Equities, Ltd.), 279 F.3d 148, 152 (2d Cir. 2002) (citation omitted).

Bankruptcy courts possess various sources of sanctions authority, including Fed. R. Bankr. P. 9011,[19] 28 U.S.C. § 1927, and the court's inherent power. "The Bankruptcy Court's discretion to award sanctions may be exercised only on the basis of the specific authority invoked by that court." In re Kalikow, 602 F.3d at 96. A court must "explain its sanctions order with care, specificity, and attention to the sources of its power." Id. (citation omitted). Whatever the type of sanctions to be imposed, "[b]efore imposing sanctions, the court must afford the person it proposes to sanction due process, i.e., notice and opportunity to be heard." Mickle v. Morin, 297 F.3d 114, 126 (2d Cir. 2002) (citation omitted); see also Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 334 (2d Cir. 1999) ("Schlaifer Nance") ("Due process requires that courts provide notice and opportunity to be heard before imposing any kind of sanctions." (citation omitted)).

In this case, the Bankruptcy Court entered inherent-power

---

[19] Rule 9011 is the bankruptcy analogue of Federal Rule of Civil Procedure 11, and the two Rules are nearly identical.

sanctions.  "Federal courts, including bankruptcy courts,
possess inherent authority to impose sanctions against attorneys
and their clients."  Ginsberg v. Evergreen Sec., Ltd. (In re
Evergreen Sec., Ltd.), 570 F.3d 1257, 1263 (11th Cir. 2009); see
also In re Kalikow, 602 F.3d at 96-97 (implying that bankruptcy
courts may utilize their "inherent powers" to impose sanctions);
Price v. Lehtinen (In re Lehtinen), 564 F.3d 1052, 1058 (9th
Cir. 2009) ("A bankruptcy court's inherent power allows it to
sanction 'bad faith' or 'willful misconduct,' even in the
absence of express statutory authority to do so." (citation
omitted)).  "'[The] court's inherent power to sanction derives
from the fact that courts are 'vested, by their very creation,
with power to impose silence, respect, and decorum[] in their
presence, and submission to their lawful mandates.'"  Schlaifer
Nance, 194 F.3d at 336 (quoting Chambers v. NASCO, Inc., 501
U.S. 32, 43 (1991)).  This inherent power is "governed not by
rule or statute but by the control necessarily vested in courts
to manage their own affairs so as to achieve the orderly and
expeditious disposition of cases."  Chambers, 501 U.S. at 43
(citation omitted); see also Rosario v. St. Luke's-Roosevelt
Hosp. Ctr. (In re Goldstein), 430 F.3d 106, 110-11 (2d Cir.
2005).  "'[B]ecause of their very potency, inherent powers must
be exercised with restraint and discretion.'"  In re Kalikow,
602 F.3d at 97 (quoting Chambers, 501 U.S. at 44); see also

24

Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980).  A

court may "safely rely on its inherent power" to impose

sanctions where, "in the informed discretion of the court,

neither the statute nor the Rules are up to the task."

Chambers, 501 U.S. at 50.  But see DLC Mgmt. Corp. v. Town of

Hyde Park, 163 F.3d 124, 136 (2d Cir. 1998) ("[T]he fact that

there may be a statute or rule which provides a mechanism for

imposing sanctions of a particular variety for a specific type

of abuse does not limit a court's inherent power to fashion

sanctions, even in situations similar or identical to those

contemplated by the statute or rule.").

　　　Inherent-power sanctions ordinarily require a clear showing

of bad faith on the part of the party to be sanctioned.

"Imposition of sanctions under a court's inherent powers

requires a specific finding that an attorney acted in bad

faith," and "inherent-power sanctions are appropriate only if

there is clear evidence that the conduct at issue is (1)

entirely without color and (2) motivated by improper purposes."

Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110,

114 (2d Cir. 2009); see also Wilder v. GL Bus Lines, 258 F.3d

126, 130 (2d Cir. 2001) (inherent-power sanctions imposable

"where the attorney has acted in bad faith in the actions that

led to the lawsuit or in the conduct of the litigation"); Revson

v. Cinque & Cinque, P.C., 221 F.3d 71, 78-79 (2d Cir. 2000)

(comparing inherent-power and § 1927 sanctions, and concluding that both require a showing of bad faith).

Nevertheless, the Second Circuit has recognized a limited exception to the bad-faith requirement in circumstances where the attorney's misconduct falls within his or her role as an "officer of the court," as opposed to the attorney's role as an advocate for his or her client.  United States v. Seltzer, 227 F.3d 36, 41 (2d Cir. 2000).  In Seltzer, the Second Circuit stated:

> [T]he inherent power of the district court also
> includes the power to police the conduct of attorneys
> as officers of the court, and to sanction attorneys for
> conduct not inherent to client representation, such as,
> violations of court orders or other conduct which
> interferes with the court's power to manage its
> calendar and the courtroom without a finding of bad
> faith.

Id. at 42.  Seltzer recognized that when an attorney engages in "misconduct that is not undertaken for the client's benefit" -- in other words, misconduct unrelated to "legitimate efforts at zealous advocacy for the client" -- bad faith is not required in order to impose inherent-power sanctions.  Id. at 40, 42. Although Seltzer did not specify the subjective standard that should apply to cases falling within this exception, the Court of Appeals suggested the following year in Wilder that the Seltzer exception applies "where the attorney has negligently or recklessly failed to perform his responsibilities as an officer

26

of the court." <u>Wilder</u>, 258 F.3d at 130 (emphasis added).

## II.  Application

On appeal, Lamborn asserts three principal grounds of error.  First, he argues that the Bankruptcy Court was incorrect to conclude that he "knew" the Judgment of Possession existed at the time he filed the Initial Petition or the First Amended Petition.  Second, he argues that the findings of fact are too inconclusive or contradictory to support the imposition of sanctions as a matter of law.  Third, Lamborn asserts that the amount of the sanction imposed against him is arbitrary and "clearly disproportional."  Each ground of appeal is separately addressed below.

A.   Knowledge of the Judgment of Possession

Lamborn first contends that the Bankruptcy Court's finding that Lamborn "knew" that a pre-petition judgment of possession had been entered against the Debtor was in error.  Lamborn argues that the record, including the transcript of the March 16 Hearing, reflects that Lamborn "only knew of [the] marshal's <u>eviction notice</u> not the <u>judgment</u>."  Lamborn argues on appeal, as he did before the Bankruptcy Court, that "mistakes get made in the [Housing Court] clerk's office, especially busy clerks' offices with lots of papers," and that he could not be sure that the Judgment of Possession actually existed until he had

"confirm[ed]" that fact by seeing the Judgment himself.  Lamborn argues that because "there is no <u>clear</u> evidence that the attorney knew of the Housing Court judgment" at the time of filing the Initial Petition and the First Amended Petition, the court's finding was in error.

Lamborn's challenge to the Bankruptcy Court's fact-finding cannot succeed.  The record contains evidence sufficient on clearly-erroneous review to support the Bankruptcy Court's finding that Lamborn "knew" of the Judgment at the time of filing the Initial and First Amended Petitions.  The record reflects, for example, the following exchange at the March 16 hearing:

> THE COURT: You knew that -- you filed the bankruptcy petition when you did because you knew that the Plumeris were going to be evicted within a day or so, correct?
>
> MR. LAMBORN: That was the verbal representation that was made to me.  And before I filed, <u>I obtained a copy of the marshal's notice</u>.  We had court -- sorry.
>
> THE COURT: How did you obtain a copy of the marshal's notice?
>
> MR. LAMBORN: My client gave it o me. [sic]
>
> THE COURT: And <u>what did you understand the basis for the marshal's notice</u> that the Plumeris were going to be evicted? [sic]
>
> MR. LAMBORN: Well, I don't disagree that in the normal course --
>
> THE COURT: Would you answer my question?

MR. LAMBORN: <u>In the normal course of events, an eviction notice would be based on a judgment.</u>

THE COURT: <u>You knew</u> before you filed this petition that the eviction notice to your client was <u>based on a judgment of possession.  Is that correct?</u>

MR. LAMBORN: <u>Oh, absolutely.  I don't contest that, Your Honor.</u>  I just had trouble coming up with the actual judgment.

(Emphasis added).  The foregoing statements are plainly indicative of knowledge by Lamborn, at the time he filed the Initial Petition, that the Judgment of Possession was outstanding against the Debtor.  To be sure, Lamborn qualified many of his responses to the court's questions at the March 16 Hearing, and he did make clear elsewhere during the colloquy that he possessed certain metaphysical doubts regarding the existence of the Judgment of Possession.  Nevertheless, given the urgency with which Lamborn acted to prevent an eviction, the Bankruptcy Court's opportunity to observe Lamborn's demeanor and assess his credibility, and the agreement by Lamborn that he "knew before [he] filed th[e] petition that the eviction notice . . . was based on a judgment of possession," there is sufficient evidence on this record to sustain the Bankruptcy Court's factual finding that Lamborn "knew" of the existence of the Judgment of Possession.[20]

---

[20] Moreover, even taking Lamborn at his word that he did not disclose the Judgment of Possession in the Initial Petition or First Amended Petition out of an excess of caution, Lamborn has

B.   Legal Sufficiency of the Evidence

Next, Lamborn asserts that the Bankruptcy Court erred as a matter of law in deciding to sanction him.  Lamborn argues, citing Revson, that "an attorney can only be sanctioned when there is clear evidence that his claims are entirely meritless and used for improper purposes."  Lamborn stresses that "the bankruptcy court specifically found that Lamborn's argument before that court was 'plausible'" and that "the bankruptcy court's finding of plausibility prevents it from imposing sanctions."  Finally, Lamborn argues in his reply brief that he "cannot be sanctioned for opposing counsel's mistake" in failing to serve a copy of the Judgment of Possession on the Debtor.

The record contains sufficient evidence to support the Bankruptcy Court's finding that Lamborn's failure to disclose and file the Judgment was reckless conduct in violation of his duties as an officer of the court, and therefore, sanctionable under the Seltzer exception.  In the first instance, Lamborn's heavy reliance on the Bankruptcy Court's statement that Lamborn had "posited a weak but plausible explanation" is misplaced. When read in context, that statement reflects only the

---

failed to explain what changed between January 11 and January 15, when he filed the Second Amended Petition and finally disclosed the existence of the Judgment of Possession (notwithstanding that neither he nor the Landlord had yet obtained a copy of that Judgment).

Bankruptcy Court's characterization of Lamborn's post hoc explanation at the March 16 Hearing for why he behaved as he did in the past, not the Bankruptcy Court's considered evaluation regarding the reasonableness of Lamborn's conduct and intent. The fact that an attorney provides a "plausible" account as to his own motivations does not mean that the underlying conduct cannot be sanctioned if that conduct was reckless or taken in bad faith.  To the extent Lamborn believes he was improperly sanctioned for having made a "weak but plausible argument" at the March 16 Hearing, Lamborn misunderstands the nature of the sanctions inquiry.

Second, Lamborn's efforts to deflect onto the Landlord the blame for his reckless conduct cannot succeed.  In the first instance, although Lamborn argues that "[the Landlord] was required to serve a Notice of Entry on either Debtor/Appellant or on [Dankberg]" and/or that it is "the practice in New York State court" to serve such a "Notice of Entry," Lamborn cites no authority for that proposition.  Nor does the face of the Judgment of Possession itself contain any endorsement directing service of that Judgment, as some Housing Court judges in their discretion require.  More importantly, Lamborn has not offered an adequate excuse for his own failure to disclose the Judgment

as required by 11 U.S.C. § 362(*l*)(5).[21]  Lamborn, as the attorney

for a party wishing to invoke the Bankruptcy Court's

jurisdiction, must bear the burden of complying with the

Bankruptcy Court filing procedures.  Thus, Lamborn's belated

contention that "there is no specific language in 11 U.S.C. 362

which specifically places the whole burden of ascertaining a

Housing Court judgment on Debtor/Appellant" not only overlooks

the General Order of the Bankruptcy Court to which he elsewhere

alludes, but disregards the simple fact that he, as counsel for

the Debtor, is the party seeking relief.

     Third, much of the factual predicate supporting the

Bankruptcy Court's finding of recklessness is, in fact,

undisputed.  First, Lamborn does not dispute the Bankruptcy

Court's finding that Lamborn knew that the Debtor had been

served with a Notice of Eviction.  By law, a Notice of Eviction

is not served on a tenant until after the Landlord obtains a

Judgment of Possession.  See N.Y. Real Property Actions &

Proceedings Law § 749(1).  Second, Lamborn does not dispute the

---

[21] The Bankruptcy Court found in the Sanctions Order that, "even
if the failure to disclose the judgment in the Initial Petition
was excusable," Lamborn had still failed to offer a reasonable
explanation for his failure to procure and file the Judgment
immediately thereafter.  The transcript of the March 16 Hearing
reflects that Lamborn's only reason for not filing the Judgment
with the First Amended Petition was that, as of January 11, he
had not "had time to go down to Housing Court personally and
look in the file."  Lamborn does not explain, however, why he
agreed to represent the Debtor in filing for bankruptcy if he
did not have the time to file the Debtor's petition properly.

Bankruptcy Court's finding that the Initial Petition was filed for the purpose of preventing the Landlord from evicting the Debtor the following day.[22]   Third, Lamborn acknowledged at the March 16 Hearing that he knew, at the time of filing the Initial Petition, that the petition contained a certification page on which he was required to indicate whether a pre-petition judgment of possession was outstanding against the Debtor. Fourth, Lamborn "[a]bsolutely" agreed at the March 16 Hearing that attorneys have a duty to check the state court file in order to obtain any judgment of possession before filing the bankruptcy petition, and admitted that he had not done so. Fifth, Lamborn acknowledges in his appellate brief that he is familiar with the Bankruptcy Court's filing practices, which he characterizes as "requir[ing] that the debtor and her attorney file the certification of the judgment and a copy of the judgment at the same time."[23]

Finally, in addition to the foregoing considerations, at least one other circumstance plainly supports the Bankruptcy

---

[22] Indeed, the Bankruptcy Court found that "each [of the three bankruptcy cases] was filed to stop the Landlord's state court litigation seeking to evict the Debtor from her rental apartment."  Neither the Debtor nor Lamborn contests this finding on appeal.

[23] Cf. Seltzer, 227 F.3d at 42 (noting that the court may invoke inherent-power sanctions under the Seltzer exception where, inter alia, the attorney has committed "violations of court orders").

Court's imposition of sanctions against Lamborn.  As made plain
in the statutory analysis at the beginning of this Opinion,
because Lamborn failed to indicate in the Initial Petition that
the Debtor was subject to a pre-petition judgment of possession
at the time of filing for bankruptcy, 11 U.S.C. § 362(b)(22)
automatically took effect.  The filing of the Initial Petition,
in other words, did not trigger any automatic stay as to the
Debtor's eviction proceedings.[24]  Notwithstanding that fact,
Lamborn faxed the January 6 Letter to the City Marshal directing
him to "cease all prosecution of the above referenced case [and]
release the execution of warrant."  Moreover, because Lamborn
had not disclosed the Judgment of Possession on the Initial
Petition, the duties of the Clerk of the Bankruptcy Court under
§ 362(*l*)(4)(B) to render notice to the Landlord regarding the
applicability of § 362(b)(22) were not triggered, and Lamborn
was thus able to demand a halt to the eviction without
contradiction from the court.  The foregoing considerations not
only reinforce the Bankruptcy Court's finding that Lamborn's
conduct was so reckless as to be sanctionable, but may as

---

[24] For this reason, Lamborn's reliance on his own "caution" is
misplaced.  While Lamborn contends that "[a]ny attorney would be
cautious about making such [§ 362(*l*)] certification without a
copy of the judgment in front of him or her," the practical
effect of exercising such "caution" was to deprive his client of
any ability to forestall the effect of § 362(b)(22).  If Lamborn
truly wished to serve his client zealously within the bounds of
the law and obtain a stay of eviction, he would have disclosed
the Judgment of Possession.

readily have supported a finding of bad faith, particularly
given Lamborn's admitted familiarity with the § 362(*l*)
certification procedure.[25]

   The litigation history between the Debtor and the Landlord
set forth above reflects an extraordinary and troubling pattern
in which the Debtor has repeatedly invoked federal bankruptcy
jurisdiction for the purpose of thwarting the operation of the
state courts and forcing the Landlord repeatedly to pursue
relief from the operation of the bankruptcy stay, even where no
stay existed (in the most recent case).  The Bankruptcy Court
indeed behaved "[c]haritably" in going out of its way to
conclude that no "bad faith" was present on this record on the
part of either the Debtor or Lamborn, notwithstanding the
Debtor's multiple last-minute bankruptcy filings; the Debtor's
voluntary dismissal of the 2009 Chapter 13 Proceeding after the
automatic stay was vacated, followed by another Chapter 13
filing less than three months later; Lamborn's repeated failure
to disclose the Judgment of Possession when he knew that one

---

[25] In his reply brief, Lamborn argues that the Landlord
wrongfully tries to have it "both ways" by arguing, first, that
there was no automatic stay and, second, that the Landlord was
compelled to bring the January 11 Motion to lift the automatic
stay.  Lamborn asserts that "[i]f there was no Automatic Stay,"
then "there was no need for a Motion to Lift Stay."  Lamborn
cannot be heard to argue that the Landlord erred by filing the
January 11 Motion when Lamborn himself took affirmative steps to
frustrate the Landlord from proceeding with the eviction by
sending the January 6 Letter.

existed; Lamborn's frustration of the statutory duty imposed on
the Bankruptcy Court under § 362(*l*)(4)(B) to notify the Landlord
that the eviction was not stayed; and Lamborn's naked demand
that the City Marshal halt the eviction proceedings despite the
fact that he knew or should have known that no bankruptcy stay
existed.  In short, not only did the Bankruptcy Court act within
its discretion in concluding that Lamborn was reckless in his
failure to comply with 11 U.S.C. § 362(*l*)(5), but there would
almost certainly be sufficient evidence in this record to
sustain a finding of bad faith on the part of Lamborn or the
Debtor as well.

C.   Amount of Sanctions

Finally, Lamborn asserts two separate arguments relating to
the amount of sanctions imposed.  First, Lamborn challenges the
amount awarded as having "no basis in the record."  Lamborn's
argument is without merit.  Having determined that an award of
attorney's fees to the Landlord was merited, the Bankruptcy
Court was entitled to exercise discretion in determining the
reasonable amount of fees to award.  To that end, the Landlord
requested $4,750 in attorney's fees in conjunction with the
January 11 Motion and supported that fee application with

contemporaneous time records.[26]  The Bankruptcy Court concluded,
however, that the fee request was excessive, and the court
imposed only roughly half that amount, or $2,500, as sanctions.[27]
The Bankruptcy Court thus not only acted well within its
discretion by reducing the fee award, but showed considerable
leniency toward Lamborn in so doing.  Given this posture,
Lamborn cannot be heard to argue that this reduced amount was
"arbitrary" when the court's exercise of its sound discretion
was to Lamborn's ultimate and sole benefit.

Second, Lamborn asserts that the sanctions award is
"completely disproportional" and that "[he] is being treated as
if he were a serious criminal."  Lamborn observes that $2,500 is
"equal to 85% of the median household income in the Bronx";
exceeds "[t]he highest fine for the most serious misdemeanor
under New York State law"; and falls within the "range of the
most serious misdemeanors in federal court."  This argument is

---

[26] The Landlord also sought sanctions in the amount of $29,082.50
in connection with the earlier state court litigation, but the
Bankruptcy Court correctly refused to require Lamborn to pay
those fees, as Lamborn was not the Debtor's counsel in that
litigation.

[27] "In determining what fee is reasonable," the court is
permitted to "take[] account of claimed hours that it views as
excessive, redundant, or otherwise unnecessary."  Bliven v.
Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (citation omitted).  In
so doing, the court "does not play the role of an uninformed
arbiter but may look to its own familiarity with the case and
its experience generally as well as to the evidentiary
submissions and arguments of the parties."  Id. (citation
omitted).

frivolous.  Lamborn identifies no authority for the proposition that an attorney's fee award should relate, in any way, to median household income or to criminal penalties under state or federal law.  Courts can, and do, routinely impose attorney's fees awards that are orders of magnitude greater than $2,500 when attorneys or parties, by their conduct, cause those expenses to be wrongfully incurred.

Lamborn does not argue that paying the $2,500 attorney's fee award would represent any financial hardship to himself, nor does he identify any other legitimate basis for concluding that the amount of sanctions imposed was anything other than restrained.  As such, Lamborn's challenge to the amount of the attorney's fee award imposed as sanctions cannot succeed.

## CONCLUSION

The March 25, 2010 Order of the Bankruptcy Court is affirmed.  The Clerk of Court shall close the case.

SO ORDERED:

Dated:     New York, New York
           August 2, 2010

DENISE COTE
United States District Judge

38